Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GARNER PROPERTIES & MANAGEMENT, LLC, a Michigan limited liability company, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| | ) | Case No. 17-cv-11439 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| MARBLECAST OF MICHIGAN, INC., and AMERICAN WOODMARK CORPORATION, | ) ) ) ) | |
| Defendants. | | |

## CLASS ACTION COMPLAINT

Plaintiff, Garner Properties, LLC ("Garner"), brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendants Marblecast of Michigan, Inc. ("Marblecast") and American Woodmark Corporation (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.     Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.     Defendants sent Plaintiff at least one advertisement by facsimile and in violation of the TCPA. Exhibit A. Plaintiff did not expressly consent to receive Defendants' advertisement by fax and does not have an established business relationship with Defendants.

3.     Plaintiff brings this action against Defendants on behalf of a class of all persons or entities that Defendants sent one or more telephone facsimile messages ("faxes") about kitchen and bath cabinetry and surfaces or installation services available through www.marblecastofmichigan.com or www.waypointlivingspaces.com, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines Defendants' violations were knowing or willful, injunctive relief, compensation and attorney

fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4.     Defendants' unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. The recipient of a "junk" fax loses the use of its fax machine, and many lose their paper and ink toner in printing the fax. Such an unsolicited fax interrupts the recipient's privacy. A junk fax wastes the recipient's valuable time that would have been spent on something else.

5.     Defendants' fax advertises their cabinetry services and marble, surface, and cabinet products along with installation services. Exhibit A.

## PARTIES, JURISDICTION, AND VENUE

6.     Plaintiff is a Michigan limited liability company with its principal place of business in Taylor, Michigan.

7.     Marblecast of Michigan, Inc. is a Michigan corporation with

its principal place of business in Oak Park, Michigan.

8.     American Woodmark Corporation is a Virginia corporation with its principal place of business in Winchester, Virginia.

9.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

10.     Personal jurisdiction exists over Marblecast in Michigan because Defendant is located in Michigan and has transacted business and committed tortious acts within the State.

11.     Personal jurisdiction exists over American Woodmark in Michigan because Defendant has transacted business and committed tortious acts within the State.

12.     Venue is proper in the Eastern District of Michigan, Southern Division because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

13.     Marblecast is a kitchen and bath contractor, providing both products and installation.

14.     American Woodmark is a cabinet manufacturer which sells its cabinetry products under different brand names, including Waypoint

Living Spaces.

15.    Marblecast is an authorized Waypoint Living Spaces dealer and listed by American Woodmark on its www.waypointlivingspaces.com website.

16.    Defendants sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendants are directly liable for violating the TCPA.

17.    Plaintiff has received at least one of Defendants' advertisements by facsimile. A true and correct copy of the fax Plaintiff received on November 3, 2016 is attached as Exhibit A.

18.    Exhibit A is a one-page document Defendants sent by fax advertising "Deal Direct with Factory." The fax informs the recipient that Marblecast is the manufacturer of a "complete line of quality cultured marble and solid surface." Exhibit A.

19.    Exhibit A promotes the commercial availability of Waypoint Cabinetry. Exhibit A informs the reader that kitchen and bath cabinetry may be "discounted 65%." Exhibit A provides the website address for American Woodmark's Waypoint Living Spaces brand:

www.waypointlivingspaces.com. Exhibit A.

20.     Exhibit A informs the reader that Marblecast provides installation services on all products. Exhibit A.

21.     Exhibit A promotes the quality of Defendants' kitchen and bathroom products by stating that Defendants use "top quality woods" and that drawers are "full extension, dovetail, soft-close." Exhibit A.

22.     Exhibit A promotes the website for American Woodmark's Waypoint Living Spaces brand.

23.     Exhibit A includes Marblecast's name, address and telephone contact information, along with Marblecast's website on which to view Marblecast's products and place an order.

24.     Exhibit A promotes the commercial availability or quality of goods and services available through Defendants' websites www.waypointlivingspaces.com and www.marblecastofmichigan.com.

25.     Exhibit A does not include the mandatory opt-out notice required by the TCPA. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

26.     Plaintiff did not expressly invite or give permission to anyone to send Exhibit A or any other advertisement from Defendants'

to Plaintiff's fax machine.

27.    On information and belief, Defendants sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

28.    Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about their clients' needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person sent one or more telephone facsimile messages from about Waypoint Cabinetry available at www.waypointlivingspaces.com.

Plaintiff reserves the right to modify the proposed class definition or propose subclasses after discovery about Defendants' fax advertising program and will do so through a motion for class certification pursuant to Fed. R. Civ. P. 23.

30.    Excluded from the class are Defendants, any entity in which

7

either Defendant has a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

31.  In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendants sent to Plaintiff by fax, as well as all advertisements Defendants sent to the other class members.

32.  Defendants' fax advertising program involved other, substantially-similar advertisements sent to increase traffic to and purchases from Defendants' websites, www.marblecastofmichigan.com or www.waypointlivingspaces.com. Plaintiff intends to locate those advertisements in discovery. Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

33.  This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of

law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

34. **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but will be obtained from Defendants' records or the records of third parties.

35. **Commonality and predominance.** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

    a.    Whether <u>Exhibit A</u> and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants advertised the commercial availability or quality of property, goods or services;

b. Whether Defendants sent advertisements by facsimile promoting the commercial availability or quality of property, goods, or services;

c. The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent fax advertisements;

d. Whether Plaintiff and the other class members should be awarded statutory damages;

e. If the Court finds that one or both Defendants willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

f. Whether the Court should enjoin one or both Defendants from faxing advertisements in the future; and

g. Whether Defendants' conduct as alleged herein constituted conversion.

36. **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class

members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

37. **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained undersigned counsel, who are competent and experienced in complex class action litigation, and in TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

38. **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would

create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if one or both Defendants choose to advertise by fax again in the future.

39.  **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

40. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

41. Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendants.

42. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

43. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

44. The TCPA provides a private right of action as follows:

> 3. <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such

violation, whichever is greater, or

(C)     Both such actions.

47 U.S.C. § 227 (b) (3).

45.   The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

46.   The TCPA expressly mandates the form and content of an opt-out notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

> In implementing the requirements of this subsection, the Commission ...
>
> (D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if...
>
> > (i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;
> >
> > (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;
> >
> > (iii) the notice sets forth the requirements for a request under subparagraph (E);
> >
> > (iv) the notice includes—

(I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and

(II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

(i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph

15

(D)(iv) or by any other method of communication as determined by the Commission; and

(iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

47. The FCC's regulations at 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) expressly require the following:

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

(A) The notice is clear and conspicuous and on the first page of the advertisement;

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes -

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to

such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

...

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

(A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

(C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

48. Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending an advertisement by facsimile (such as <u>Exhibit A</u>) to Plaintiff and the other class members without their prior express invitation or permission.

49. Defendants' fax does not set forth the requirements for Plaintiff or any member of the putative class to properly request an opt-

out as explained by 47 C.F.R. § 64.1200 (a) (4) (v).

50. Because Defendants will not be able to prove that they obtained Plaintiff's prior express invitation or permission before sending an advertisement by fax, and because Defendants will not be able to prove their fax contained a compliant opt-out notice, Defendants will not be able to prove any defense against Plaintiff's TCPA claim.

51. Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4).

52. The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if their actions were negligent. 47 U.S.C. § 227 (b) (3).

53. Even if Defendants did not intend to injure Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

54. If Defendants' actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to 3 times the amount. 47 U.S.C. § 227 (b) (3).

55. Marblecast is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification; and the faxes advertise Marblecast's kitchen and bathroom cabinetry products and installation services.

56. American Woodmark is liable for the fax advertisements at issue because it participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification; and the faxes advertise American Woodmark's Waypoint Living Spaces brand kitchen and bathroom cabinetry products.

57. Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose

paper and toner consumed in the printing of Defendants' faxes. Defendants used the fax machines of Plaintiff and the other class members. The subject faxes wasted Plaintiff's valuable time; time that otherwise would have been spent on Plaintiff's business activities. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award $500.00 in statutory damages for each violation of the TCPA;

C. That, if it finds Defendants willfully or knowingly violated

the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

58.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

59.     Plaintiff brings Count II on behalf of itself and a class of similarly situated persons and against Defendants.

60.     By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as it did with the

valuable time of the other class members.

61.    Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

62.    By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

63.    Defendants knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

64.    Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

65.    Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in

receiving, routing, and reviewing Defendants' illegal fax. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award punitive damages;

D.     That the Court award attorney's fees;

E.     That the Court award costs of suit; and

F.     That the Court award such further relief as it may deem just and proper under the circumstances.

**COUNT III**
**STATUTORY CONVERSION UNDER**
**MICH. COMP. LAWS § 600.2919(a)(1)(a)**

66.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

67.    Plaintiff brings Count III on behalf of itself and a class of similarly situated persons.

68.    Defendants sent unsolicited faxes converting Plaintiff's fax machine, paper, toner, and employees' time for Defendants' own use.

69.    Defendants' actions are in violation of Mich. Comp. Laws § 600.2919(a) (1) (a) and is entitled to recover three times the amount of actual damages sustained, plus the costs and reasonable attorney fees.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award three times the amount of actual costs;

C.    That the Court award punitive damages;

D.    That the Court award reasonable attorney's fees;

E.    That the Court award costs of suit; and

24

F.    That the Court award such further relief as it may deem just

and proper.

Respectfully submitted,

GARNER PROPERTIES &
MANAGEMENT, LLC, individually and
as the representative of a class of
similarly-situated persons,

By:  /s/ Phillip A. Bock

Phillip A. Bock
Robert M. Hatch (MI#P46566)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL  60602
Telephone:  312-658-5500
Facsimile:  312-658-5555

Aaron D. Cox, Esq. (MI#P69346)
The Law Offices of Aaron D. Cox, PLLC
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664

Mark K. Wasvary
Mark K. Wasvary, P.C.
2401 W. Big Beaver Rd., Ste 100
Troy, MI 48084
Telephone: 248-649-5667